[Crim. No. 4412. Second Dist., Div. Three. Apr. 28, 1950.]

THE PEOPLE, Respondent, v. HARRY VERL HERMAN, Appellant.

Morris Lavine for Appellant.

Fred N. Howser, Attorney General, and Gilbert Harelson, Deputy Attorney General, for Respondent.

WOOD, J.—In a jury trial, defendant was convicted of two counts of the crime of incest, in that he had sexual intercourse with his daughter on December 29, 1948, and on January 16,

1949. He appeals from "the conviction, judgment and sentence and the denial of a Motion for a New Trial."

Appellant asserts that the evidence is insufficient to support the verdicts. One of his arguments is that he is not the father of the prosecutrix.

Viola Marie Herman testified as follows: She became 16 years of age on May 14, 1948. She always knew the defendant as her father. She called him "father," and he called her "daughter." From the earliest time she could remember until she was 8 years old, he lived in the same house where she and her mother lived in Cleveland, Ohio. He left her and her mother when she (Viola) was 8 years old. When Viola was 9 years old, her mother divorced defendant and married Mr. Deubel. After the marriage Viola did not see Mr. Deubel for about 4 years—he was in the Army. In 1946, when she was 14 years old, she and her mother went to live with Mr. Deubel, and Mr. Deubel adopted Viola, and at the time of the trial she had "the name of Deubel." In August, 1948, defendant telephoned to Viola in Cleveland and asked her to come to Los Angeles. He "wired" an airplane ticket to her, and she arrived in Los Angeles on November 20, 1948. She went to live with defendant at his apartment, and she slept in a bed in the living room, and he slept on a couch in the dining room. There was an archway between those rooms. She had sexual intercourse with defendant on December 29, 1948, and on January 16, 1949. The latter act occurred on the couch in the dining room, and at that time her boy friend, one Dodd, was asleep in the bed in the living room. She had sexual intercourse with defendant eleven times and with Dodd four times. On February 7, 1949, at the request of defendant, she had sexual intercourse in the apartment with William Brown in the presence of defendant, and during that occurrence defendant took several pictures of her and Brown. (She identified two pictures, then shown to her, as two of those pictures. The pictures were received in evidence as People's Exhibits 1 and 2.) For several hours prior to the time the pictures were taken, she and her father had been "drinking," and she had about 15 drinks. After the pictures were taken, she and the defendant were in "the car," and he had been hitting her and she "jumped out and ran down the street." While defendant had her up against a building trying to quiet her, she kept screaming, and the police came and took her to juvenile hall.

A police officer, who investigated the case, testified that he

asked the defendant why he had been fighting his daughter, and he replied that he and another man had been drinking with her and she decided to go to her home in Cleveland and they had an argument about going to the juvenile division; that he asked defendant if the girl, Viola, was his daughter, and the defendant replied, "Yes, that is my daughter." The officer also testified that defendant said that he never had sexual intercourse with Viola; that he (officer) showed two pictures (People's Exhibits 1 and 2) to defendant and asked him if he had taken the pictures, and defendant replied that he had taken them to protect himself from any accusations made by his daughter regarding him; and that the defendant said the woman in the pictures was his daughter, Viola.

The judge of the juvenile court testified that at a pre-detention hearing in the juvenile court, pertaining to Viola, he asked the defendant if defendant was the father of Viola, and that defendant replied, "Yes." He also testified that on another occasion, when the defendant was requesting that the court grant Viola permission to marry Dodd, the defendant said he (defendant) was the father of Viola.

A deputy probation officer testified that defendant told her that he was the father of Viola. A police officer, who arrested defendant, testified that defendant said he (defendant) was the father of Viola.

Defendant testified in part as follows: He had been married to Viola's mother, and he separated from her in April, 1931, at Cleveland, and then he had gone to Washington, D. C. where he stayed eight months. He went to Peoria, Illinois, on January 12, 1932, and there resumed marriage relationship with his wife. He had no sexual intercourse with his wife after April, 1931, and prior to January 12, 1932. He stayed in Peoria until July, 1932, and during that time his wife told him that she was going to give birth to a child, and she asked him if she could say that it was defendant's child. The child Viola, was born about May 15, 1932. He allowed his name to be used for the child because he liked her mother. The mother and defendant agreed that they would never tell Viola who she "really was." Viola wrote several letters to defendant begging him to let her come to Los Angeles. After she had been with him and his second wife about two weeks, he returned home from work and found his second wife and Viola very much intoxicated. His second wife returned to her former home in Michigan, and he told Viola that he

wanted her to return to Cleveland. She said that she did not want to go there and that if he did not keep her, she would tell "them" that it was defendant who had had sexual relations with her and that it was not Dodd. He never had sexual intercourse with Viola. On February 7th, the day the pictures were taken, William Brown came to defendant's apartment and after Brown had been there about three hours with defendant and Viola the defendant went away and returned in about half an hour. When he returned and entered the apartment he saw Viola and Brown in bed having sexual intercourse, and he took two pictures of them, and he said, "This will show that I haven't done anything to you, Viola, this is one thing you are not going to blame me for." He then threw Brown out of the apartment. Later that night, while defendant and Viola were fighting in the street, they were arrested, and thereafter they were taken to juvenile hall.

The evidence was sufficient to support the finding of the jury that appellant is the father of Viola, the prosecutrix. (*Cf., People v. Schafer,* 12 Cal.App.2d 5, 6 [54 P.2d 733]; *People v. Roberts,* 82 Cal.App.2d 654 [187 P.2d 27].)

█ Appellant also argues, regarding the alleged insufficiency of the evidence, that the testimony of the prosecutrix is inherently improbable. In this respect, he asserts that it is improbable that she would have sexual intercourse with appellant while her friend Dodd was in the next room. She testified that the act referred to occurred on January 16th about 7 a. m., that she, Dodd, and appellant had "been up" during all of the two preceding nights drinking and bowling, that they had not slept during the two preceding days and nights, that at the time of said act Dodd had had "a lot of drinks," he was sleeping, he was "out." The testimony was not inherently improbable.

█ Appellant also argues that the evidence was insufficient because the prosecutrix was an accomplice and her testimony was uncorroborated. In *People v. Pettis,* 95 Cal.App. 2d 790 [213 P.2d 731], wherein the defendant was convicted of incest in that he had sexual intercourse with his 17-year-old daughter, it was said at page 793: "[T]he complaining witness being under age of consent (Pen. Code, § 261, subd. 1) she was not at law an accomplice. It therefore follows that her testimony alone was legally sufficient to sustain the conviction of the act charged." The prosecutrix herein, who was 16 years of age, was not an accomplice and it was not necessary that her testimony be corroborated.

■ Appellant contends that the court erred in receiving in evidence the photographs of Brown and the prosecutrix which were taken by appellant. He argues that the photographs were "irrelevant regarding any proof of incest"; that since they tended to show that appellant committed another crime, namely taking a lewd picture, it was error to receive them herein. The prosecutrix testified that, at the request of appellant, she had sexual intercourse with Brown in the presence of appellant; that he told her that she could go home to her mother if she would have intercourse with Brown while appellant watched, that he liked to watch; that appellant told her to take her clothes off and get in bed with Brown; that she undressed in the presence of appellant and Brown; that appellant took 24 pictures of them—"From the beginning, before I was undressed, to the end"; that appellant gave her instructions as to the manner in which to have intercourse with Brown while he took pictures, and that he posed her. The photographs were admissible in evidence as tending to show appellant's lewd intent, his disposition to commit the act charged and the probability of his having committed it. (See *People* v. *Boyd*, 95 Cal.App.2d 831, 833 [213 P.2d 724], wherein it was held in a prosecution under section 288 of the Penal Code that evidence of similar lewd acts committed upon a person other than the prosecutrix was admissible as tending to show lewd intent, disposition to commit the act charged, and probability of having committed it.) As stated in *People* v. *Boyd, supra,* at page 833: "If evidence of another crime is necessary or pertinent to proof of the charge against a defendant it will not be excluded merely because it involves the commission of another crime." The court did not err in receiving the photographs in evidence.

■ Appellant also contends that the court erred in refusing to give certain instructions, requested by appellant, pertaining to the testimony of an accomplice. Since, as hereinabove stated, the prosecutrix was not an accomplice, the court did not err in refusing to give such instructions.

■ Appellant also contends that the court erred in refusing to give an instruction, requested by appellant, "that unless you find beyond a reasonable doubt . . . that Viola Deubel is the daughter of the defendant, Harry Herman, you must acquit the defendant." The court gave the following instruction: "Before the defendant may be convicted of the offenses charged in . . . the information . . . you must find that the

defendant committed those specific offenses. You may not convict him of any offense with which he is not here charged. . . ." The offenses charged in the information were two counts of the crime of incest, in that, the defendant Harry Verl Herman did unlawfully "have sexual intercourse with Viola Marie Herman, who was then and there the daughter of the said Harry Verl Herman." The court also instructed the jury that: "Every person who has an act of sexual intercourse with his daughter is guilty of a crime known as incest." The court also instructed the jury properly on the subject of reasonable doubt. The instructions which were given included in substance the said instruction requested by appellant.

■ Appellant also contends that the court erred in giving the following instruction: "Before the defendant may be convicted of the offenses charged in . . . the information . . . you must find that the defendant committed those specific offenses. You may not convict him of any offense with which he is not here charged. You may, however, consider any evidence as to the conduct and relationship between the defendant and the girl Viola on occasions other than that involving the offenses charged, as tending to show, if it does show, the disposition of the defendant toward such child and his intent at the time of the alleged offense here charged against him." He argues that the instruction was prejudicial, in that it told the jury that appellant's conduct in taking the photographs might tend to show the disposition of appellant toward Viola and "his intent of his crime" of alleged incest. The photographs and the testimony regarding the taking of them having been properly received in evidence, the instruction was required in order to advise the jury as to the limited purpose for which such evidence was received. The instruction was properly given.

■ Appellant also contends that the court erred in permitting an amendment of the information whereby the date of the offense alleged in count I, namely, "on or about" December 27, 1948, was changed to "on or about" December 29, 1948. Viola testified that one of the acts of intercourse with appellant was on December 29, 1948, and was not on December 27, 1948, as alleged in the information. The deputy district attorney made a motion to amend the information as to said date, and the court stated the information is amended to conform to proof by changing the date to read "on or about December 29th." Appellant did not object to the amendment, and he did not ask for a continuance in order to prepare

for trial under the information as amended. He did not suggest that he was surprised, or unprepared for trial, by reason of the amendment. Appellant asserts that he "had a complete alibi for" the date of December 27, 1948, and that the amendment destroyed his alibi which he "had to present and did present to the jury." The record does not show any evidence pertaining to an alibi for December 27th or December 29th. The appellant testified regarding the 27th and the 29th, stating that he did not have sexual intercourse with Viola on either of those dates or at any time. Section 1008 of the Penal Code provides that an information may be amended "for any defect or insufficiency, at any stage of the proceedings; and the trial shall continue as if it had been originally filed as amended, unless the substantial rights of the defendant would be prejudiced thereby, in which event a reasonable continuance . . . may be granted." The court did not err in permitting the amendment. (See *People* v. *Lachuk*, 5 Cal. App.2d 729, 730 [43 P.2d 579], where it was held that it was not error to amend the information by changing the date of the alleged offense where the defendant did not object, nor suggest surprise, nor request a continuance. See, also, *People* v. *Moranda*, 87 Cal.App.2d 703, 704 [197 P.2d 394], where it was held there was not a fatal variance between the date alleged, "on or about" December 16th, and proof showing that the offense occurred on December 18th.)

The judgment and the order denying the motion for a new trial are affirmed. The purported appeals from the conviction and the sentence are dismissed.

Shinn, P. J., and Vallée, J., concurred.